393 A.2d 973

**Carl ALESSANDRO, Sr., Appellant at No. 111,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Appellant at Nos. 122, 123, 124 and 125.**

Superior Court of Pennsylvania.

Argued April 13, 1977.

Decided Nov. 1, 1978.

Daniel M. Berger, Pittsburgh, with him Michael P. Malakoff, Pittsburgh, for appellant at No. 111, and appellee at Nos. 122, 123, 124, and 125.

George M. Weis, Pittsburgh, with him Weis & Weis, Pittsburgh, for appellant at Nos. 122, 123, 124, and 125, and appellee at No. 111.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

## Opinion of the Court

CERCONE, Judge:

Plaintiff brought this class action on behalf of all persons insured with the defendant insurance company whose uninsured motorist coverage payments had been reduced by set-offs equal to amounts paid by the company under medical payments coverage. The class excepted those whose claims were barred by the statute of limitations.

A clause customarily included in the insurance policies issued by defendant allows payments under uninsured motorist coverage to be reduced by payments under medical coverage. Plaintiff contends that this clause is void as it is repugnant to the Act of August 14, 1963, P.L. 908, Sec. 1, as amended December 19, 1968, P.L. 1254, No. 397, Sec. 1, effective January 1, 1969, 40 P.S. 2000. Section (a) of the Act reads as follows.

"No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with

respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code, act of April 29, 1959 (P.L. 58). (75 P.S. Sec. 1421) under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom."

Plaintiff had uninsured motorist coverage in the amount of $10,000, the minimum required under the former Vehicle Code, 75 P.S. 1421 (1971), and medical payments coverage of $2,000. His individual claim was based on injuries his ten-year-old son received when he was struck by an uninsured motorist while riding a mini-bike. Plaintiff incurred medical bills in the amount of $2,321.75 as a result of the accident. He received an arbitration award of $5,000.00 under his uninsured motorist coverage. Neither party took an appeal from the arbitration proceedings.

Defendant offered him a check for $5,000.00 in return for a release of all his other claims arising from the same accident. Plaintiff believed that the release might bar his claim for reimbursement under the medical payment provision of his policy. He believed himself entitled to $5,000.00 *plus* reimbursement of medical bills to the extent of his medical payments coverage. Accordingly, he declined to accept the check or sign the release, but instead brought an action in assumpsit for the total amount he believed defendant owed him.

Defendant's first response to the assumpsit complaint was to file preliminary objections to the case proceeding as a class action. The objections were overruled; the lower court held that there was a common question of law which predominated over any individual questions.

Defendant's Answer and New Matter informed the court that plaintiff had accepted the $5,000.00 check and stated

that defendant had no reason to invoke the setoff clause against plaintiff since an independent basis for denying payment existed. Plaintiff admitted that he had accepted the check on advice of counsel.

The court next had occasion to consider the propriety of the class action when State Farm filed objections to plaintiff's interrogatories. The interrogatories sought the names and coverage amounts of the other persons fitting within plaintiff's definition of the class. The court below sustained the objections and withdrew class action status, apparently interpreting State Farm's plea, that there was an alternative basis for nonpayment, as a waiver of the setoff clause. The court stated that the only issue remaining was whether the events giving rise to plaintiff's claim came within the terms of the medical payments coverage. (State Farm interprets certain policy language as precluding payment because of the lack of insurance on the mini-bike the boy was riding.)

 Upon plaintiff's petition, the order was vacated and the class action was reinstated. The court stated:

> "The acceptance and cashing of the post-complaint—$5,000.00 check by the individual class representative does not make the claims of the other members of the class which plaintiff purports to represent moot, and, consequently, it is our considered judgment that, in the circumstances of this case where many members of the class would be prejudiced by the bar of the statute of limitations if this class action was bumped to the status of an ordinary suit in assumpsit, this case should continue as a class action." [1]

1. It should be noted that courts have some latitude in determining whether the mootness of the representative plaintiff's claim should terminate the class action. See generally 1 Newberg on Class Actions § 1085 et seq. (1977). In addition, the new rules in Pennsylvania pertaining to class actions now contemplate that the statute of limitations for the individual class members claims will be suspended during the pendency of a class action. Pa.R.C.P., Rule 1701, Explanatory Note-1977 (1978). Although the new rules pertaining to class actions are cited throughout, they have not altered practice in Penn-

State Farm then filed a motion for partial decertification of the class. The court below, on September 19, 1975, issued an order limiting class membership to those policyholders who had received arbitration awards of $10,000 or more. The court's reasoning was as follows.

"It is our holding that where the UMC coverage is sufficient to pay in full the tort damages suffered by the policy holder at the hands of an uninsured motorist, then there is nothing illegal or improper in a medical payments provision of the insurance policy which provides that the medical bills shall not be reimbursed to the policy holder if they have been paid or are payable under the UMC provisions of the policy. . . .

"The result of our holding is that the only members of the class in the instant law suit are those policy holders who have received an arbitration award under the policy in the amount of $10,000.00 or more. It is only those policy holders who may possibly have had denied to them the payment of their medical payments coverage on top of the $10,000.00 of tort damages payable because of the UMC insurance."

Although the redefinition of the class excluded plaintiff, the court made an exception for him, stating:

"[W]e reject the argument of the defendant that the case should be terminated because the plaintiff himself is not a member of the class as we have defined it above. We are satisfied that as a matter of common sense and fairness a plaintiff who undertakes the institution of a suit as a class action under allegations which appear on their face to make him a member of a potential class that is not frivolous, successfully institutes a class action on behalf of all those persons who ultimately turn out to have been members of the class in fact. That is to say, a subsequent determination that the named plaintiff does not qualify for class membership will not be permitted to amount to *a defect that would cause the litigation to abort*." [Emphasis supplied.]

sylvania in any way material to the instant litigation. Compare Pa.R.C.P., Rule 2230 (1975).

Discovery subsequently revealed that nine members remained in the class other than plaintiff. Plaintiff and defendant entered into a stipulation of facts with respect to these persons and filed cross motions for summary judgment. The result was that four class members were granted judgment against defendant on September 21, 1976. As to the other five, three were denied recovery because their arbitration awards, although exceeding $10,000.00, were less than the amount of their uninsured motorist coverage. Two were denied recovery for other reasons. The decision disposing of the nine claims triggered five appeals. One appeal is plaintiff's appeal, taken "individually and on behalf of the class he represents." The other four appeals are defendant's cross appeals from the judgments entered in favor of the four class members.

Plaintiff contends that the court erred in denying recovery to those class members, himself included, whose arbitration awards were less than $10,000, as well as those policyholders who settled their claims. Defendant contends, via a motion to quash the appeal, that this issue is not properly before us. We are constrained to agree.

In *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975) the Supreme Court held that an order dismissing the class aspects of a suit puts the class members out of court, is a final order for those persons, and, as such, is immediately appealable. Furthermore, such persons do not have an election to take an immediate appeal or await the outcome of the litigation concerning remaining class members as plaintiff did in the instant case. If the appeal is not taken immediately, the question sought to be challenged on appeal will be considered as waived. *Matter of Franklin Twp. Bd. of Supervisors*, 475 Pa. 65, 75–76, 379 A.2d 874, 879 & n. 14 (1977). See also Pa.R.C.P., Rule 1710, Explanatory Note-1977 (1978). Plaintiff Alessandro asks us to hold that the decision to appeal a partial decertification order at the time it was made or to await the termination of the entire matter before seeking review is at the discretion of the representative plaintiff. We cannot so hold, however,

as we do not have jurisdiction to review final orders appealed more than thirty days after their entry. *Scharfman v. Philadelphia Transp. Co.*, 234 Pa.Super. 563, 340 A.2d 539 (1975). Whatever the arguable desirability of permitting the representative plaintiff to control the timing of appellate review of a decertification order, desirability of review does not confer appellate jurisdiction. Because plaintiff did not appeal the decertification order within thirty days, he has waived the decertification issue.[2]

Relying on *McMonagle v. Allstate Ins. Co.*, 460 Pa. 159, 331 A.2d 467 (1975), defendant also contends that the claims of the remaining class members should not have been adjudicated once the court determined that plaintiff Alessandro had no cause of action.[3] In short, defendant contends that the court below erroneously permitted a class action to continue despite the fact that the court had no member of the class before it as a representative. Once again, we agree.

■■ It has been accurately noted that the named plaintiff in a class action is not simply "a key to the courthouse door." *Saylor v. Lindsay*, 456 F.2d 896, 999 (2d Cir. 1972). The interests of a would-be class representative must be squarely aligned with the interests of the absent class members if the adjudication of the court is to be binding upon them. Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure*,

**2.** Since potential class members similarly situated with respect to Alessandro's claim were never identified or notified. The court's order was not res judicata with respect to them. Pa.R.C.P., Rule 1715, Explanatory Note—1977 (1978).

**3.** In *McMonagle* our Supreme Court stated 460 Pa. at page 168, 331 A.2d at 472:

"We emphasize that this is not a case where the defendant, after the commencement of a class action seeks to avoid a class adjudication by satisfying the representative's individual claim, nor one where simple passage of time has caused the individual claim of a proper class representative to become moot. We hold only that one who has never been subjected to or threatened with subjection to the challenged conduct may not maintain a class action on behalf of those who allegedly were victimized by that conduct."

81 Harv.L.Rev. 356 (1967). This requirement is not merely a technical requirement of pleading a class action; it is rooted in fundamental notions of due process of law. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). If the representative before the court does not seek to raise on his own behalf a case or controversy substantially alike those of the absent members of the class, he lacks standing to act as a class representative. See generally 1 Newberg on Class Actions § 1040 et seq. (1977). The lack of standing goes to the heart of the jurisdiction of the court to act. *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). As one commentator has stated:

> "Because a judgment in a class action, whether favorable or unfavorable, is binding on absent class members, it is essential that any class plaintiff representing their interests be so situated as to assure that procedural due process rights of absent class members are preserved." 1 Newberg on Class Actions § 1076 at p. 130 (1977).

Thus, a person cannot litigate claims of a class of which he is not a member. *Long v. District of Columbia*, 152 U.S.App. D.C. 187, 469 F.2d 927 (1972). And, "[a] litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the . . . court." *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975).

With those principles in mind, we turn to the relevant facts of this case. At the outset of the instant litigation plaintiff Alessandro was arguably the member of a class of persons who had not been reimbursed under their medical payments coverage because of payments received from State Farm under their uninsured motorists coverage. We say arguably because at the outset it could not be determined whether such other persons did exist and, if so, how numerous they were. Nor could the court determine the amounts in controversy of any such outstanding claims and whether plaintiff Alessandro shared a common question

of law or fact which would predominate the litigation.[4] It was not until after the court determined that Mr. Alessandro was not a member of the class that the class action was ultimately certified and these questions were answered by discovery and notification of the class members. See *Sosna v. Iowa*, supra. However, when the court determined that Mr. Alessandro was not a member of the class which might be entitled to recover against State Farm, rather than proceed to discovery, it should have entered judgment for State Farm. Alessandro should then have appealed if he wished. Unfortunately, the court did not do so, and permitted Mr. Alessandro to represent those claims for medical payments wherein the recovery under UMC had reached $10,000 (i. e., policy limits), despite the fact that by its own ruling the court had determined that Mr. Alessandro was not a member of that class. Moreover, State Farm could not immediately appeal this order because, in Pennsylvania, an order certifying a class plaintiff is not final with respect to the defendant. Cf. *Bell v. Beneficial Consumer Discount Co.*, supra. Consequently, nine potential class members were identified and given notice of the pendency of the class action,[5] despite State Farm's argument that the class action must terminate for want of a class representative.[6]

■■ Undoubtedly, the court was swayed in reaching its conclusion by the undeniably excellent qualifications of

---

**4.** See Pa.R.C.P., Rule 1709 (1978). In this case, of course, the class was comprised of nine members, eight of whom had claims of $500.00 or more. Indeed, one member had a claim of $2,924.20.

**5.** Actually, even the notice was misleading. It informed the nine persons that this litigation on their behalf was being conducted by Mr. Alessandro, *a member of their class*, despite the fact that the court had already ruled that he was not a member. Had the members been informed that Mr. Alessandro was an ersatz representative, perhaps one or more of the members would have intervened and, thereby, rescued the litigation. Presumably, the new rules contemplate that absent class members be given some information concerning the representative plaintiff, because Pa.R.C.P., Rule 1713(a)(2) (1978) establishes that notice may include an inquiry whether the members consider the representation fair and adequate.

**6.** See page 976, supra.

counsel on both sides of this litigation, as well as by the time, effort and expenses already incurred. But, an attorney's talent and zeal is no substitute for the absence of a class representative. *LaMar v. H & B Novelty Loan Co.*, 489 F.2d 461 (9th Cir. 1973). Nor is the representative's personal desire to represent the class sufficient in and of itself. *Person v. New York Post Corp.*, 427 F.Supp. 1297, 1303 (E.D.N.Y.1977). Consequently the class action should have been terminated in the trial court.

Given the fact that the court permitted the class action to continue to conclusion despite the fact that it lacked a representative plaintiff, and given the fact that the court found in favor of five of the nine class members, the question remains whether we can and should do anything to alter the result. We find that in fairness to defendant, we have no choice but to vacate the judgments concerning the nine class members. Were we not to alter the status quo, State Farm would find itself in the unenviable position of having to pay the class members who won without obtaining the correlative benefit of res judicata with respect to the class members who lost. See generally Note, *Collateral Attack on the Binding Effect of Class Actions*, 87 Harv.L. Rev. 589 (1974). Several courts have already allowed successful collateral attacks on unfavorable class action judgments where either the class representation or the notice to class members was inadequate. See, e. g., *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973); *In re Four Seasons Securities Laws Litigation*, 59 F.R.D. 667 (W.D.Okl.1973); *Research Corp. v. Edward J. Funk & Sons Co.*, 15 Fed.Rules Serv.2d 580 (N.D.Ind.1971). See also M. Frankel, *Some Preliminary Observations Concerning Rule 23*, 43 F.R.D. 39 (1967). Furthermore, neither the trial court's finding of adequate representation in the instant case, nor the provision of notice, such as it was, to the absent class members of the pendency of the litigation would seem to constitute barriers to a subsequent collateral attack on the judgments. *Id.* As the circuit court stated in *Gonzales v. Cassidy*, supra:

"The purpose of [class actions] would be subverted by requiring a class member who learns of a pending suit involving a class of which he is a part to monitor that litigation to make certain that his interests are being protected; this is not his responsibility—it is the responsibility of the class representative to protect the interests of all class members." *Id.* at 76.[7]

Therefore, we cannot permit the judgments to stand, lest we work an injustice on the defendant, as well as, perhaps, those class members who lost.

However, because the class members have been identified and notified, they could be seriously prejudiced if we were to dismiss the action. An erroneous belief on a class member's part that his interests are being protected by one of his number could lead him to forego the filing of an individual suit, and the discovery that the class was represented by a nonmember could come too late for such a suit to be filed within the period required by the statute of limitations. Therefore, we conclude that the best course of action at this point is to remand to the court below with instructions that the class members other than plaintiff be informed of the dismissal of plaintiff's individual claim respecting the setoff clause, the effect of that dismissal on the status of the case, and informed that the action will terminate unless one of them intervenes within a specified time. The case is to be dismissed if no class member comes forward to serve as representative. The exact form of the notice and the time limit to be set are matters we will entrust to the discretion of the court below.

Judgments vacated and case remanded for further proceedings consistent with this opinion.

PRICE, J., dissents.

7. Although the circuit court adverted to the purposes to be served by the federal class action rule, our Supreme Court has already noted that the purposes of both the federal and state rules "are identical." *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. at 231, 348 A.2d 734.

WATKINS, former President Judge, and HOFFMAN and VAN der VOORT, JJ., did not participate in the consideration or decision of this case.