458 A.2d 235

**Arlington W. MYERS, on Behalf of Himself and all Others Similarly Situated, Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, and Charles J. Lieberth, Secretary of the Pennsylvania Department of Labor and Industry and Clement J. Cassidy, Workmen's Compensation Referee.**

Superior Court of Pennsylvania.

Submitted Jan. 5, 1982.

Filed March 25, 1983.

Henry C. Haefner, Lancaster, for appellants.

Daniel R. Schuckers, Harrisburg, for appellees.

Before CERCONE, President Judge, and SPAETH and CAVANAUGH, JJ.

CERCONE, President Judge:

This appeal involves pre-trial orders dismissing plaintiff's action on grounds of judicial and quasi-judicial immunity and holding the class issues thereby mooted. We affirm.

## I. *Factual and Procedural History*

In late 1979, Mr. Myers filed a claim for workmen's compensation benefits and a hearing was held before the referee (defendant) on February 6, 1979. When no decision had been filed by the referee before August 18, 1980, Myers then filed a Petition for Review in the nature of a Complaint in the Commonwealth Court, complete with class action allegations. In particular, Myers sought a mandamus commanding the referee to issue a decision in Count I; in Count II, Myers sought damages in the form of interest on any award by the referee, computed from 90 days after the hearing until time of award. Myers also alleged that all those persons in whose workmen's compensation cases decisions had not been rendered within 90 days of their hear-

ings were members of the class. Thereafter, and before the class issue was decided, a decision was filed in Myers' workmen's compensation case.

By Opinion and Order dated December 19, 1980, the Commonwealth Court held that Count I (mandamus) was mooted by the filing of a decision in Myers' workmen's compensation case. With regard to Count II (seeking interest), the Commonwealth Court held that the Department of Labor and Industry was immune from suit as was the Secretary of that Department. The Commonwealth Court also held that it lacked jurisdiction over the action against the referee and transferred that action to the Court of Common Pleas of Lancaster County. Myers does not complain of any of these rulings on this appeal.

The Court of Common Pleas held that the mooting of the representative plaintiff's claim for mandamus was fatal to the class action allegations and also held that the referee was immune to suit for damages under doctrines of judicial and quasijudicial immunity. While we disagree with the former holding, we agree with the latter holding and affirm the judgment below.

II. *The Class Action Issue*

■ The mooting of a class claim by satisfying the named plaintiff is a familiar tactic. Generally, it is not successful in ending the class action. One sued by a class is immediately tempted to overcome the class by mooting the representative's claims. But mooting of a claim depends upon the controversy involved having been ended. Under the federal rule, the Court considered the problem presented in *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). That court held:

> The controversy may [still] exist. however, between a named defendant and a member of the class represented by the named plaintiff even though the claim of the named plaintiff has become moot.
> 419 U.S. at 402, 95 S.Ct. at 559.

The *Sosna* Court applied that rule to a certified class and five years later it was applied to a pre-certification class in *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) where the Court held:

> When the claim on the merits is "capable of repetition yet evading review", the named plaintiff may litigate the class certification issue despite loss of his personal stake in the outcome of the litigation.
>
> 445 U.S. at 397, 100 S.Ct. at 1209.

These concerns for absent class members are compelling, but Pa.R.Civ.P. 1714 provides:

> Prior to certification, the representative party may discontinue the action without notice to the members of the class if the court finds that the discontinuance will not prejudice the other members of the class.

While the "discontinuance" in this case is not at the request of the representative party, it seems plain that the minimal safeguards of Rule 1714 should also attend judicial terminations of class actions, at least when that "discontinuance" occurs because of the mooting of the class representative's claim. Thus, since there was no finding below that the "discontinuance would not prejudice the other members of the class," Pa.R.Civ.P. 1714, ordinarily we would reverse and remand with directions to determine whether the discontinuance would or would not prejudice the rights of absent class members. Even when it is found that the discontinuance would not prejudice absent class members, we think "that the best course" is to allow absent class members a reasonable time to come forward and intervene. *See Alessandro v. State Farm Mut. Auto. Ins.*, 259 Pa. Superior Ct. 571, 583, 393 A.2d 973, 979 (1978), *modified on other grounds*, 487 Pa. 274, 409 A.2d 347 (1979).[1]

However, as we hold that the referee was absolutely immune, it is clear that absent class members could not

---

1. When it is found that the discontinuance will prejudice absent class members, it follows, of course, that a reasonable time should be allowed for absent class members to come forward and intervene.

have been prejudiced. As such, we now turn to the merits of that immunity.

## III. *The Immunity Issue*

■ The question presented on this branch of the present appeal is whether workmen's compensation referees enjoy a judicial or quasi-judicial immunity. This requires an examination of the nature of the duties of such referees. In the present statutory scheme, workmen's compensation referees set hearings,[2] hold hearings,[3] admit and exclude evidence,[4] make findings of fact,[5] and come to conclusions of law.[6] The referee is also empowered to investigate the petition and answer,[7] and to subpoena witnesses and other evidence.[8] He is, in short, the trial judge of the workmen's compensation system.[9]

There can be no serious question that such a person generally enjoys a quasi-judicial immunity. *See generally Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Petition of Dwyer*, 486 Pa. 585, 406 A.2d 1355 (1979); *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936). While it is clear that the judicial immunity of judicial officers of general jurisdiction is absolute, 20 Penna.L.Encyc., *Judges*, § 10 at 76, the court has not been called on to decide whether the judicial immunity of officers of inferior

**2.** 77 P.S. § 802.

**3.** 77 P.S. § 775.

**4.** 77 P.S. § 834.

**5.** 77 P.S. § 773; *and see generally, Bush v. Workmen's Comp. App. Bd.*, 63 Pa. Commonwealth Ct. 289, 291–292, 438 A.2d 660, 662 (1981).

**6.** 77 P.S. § 833.

**7.** 77 P.S. § 831.

**8.** 77 P.S. § 833.

**9.** In *Morgan v. Sanderson and Porter*, 146 Pa. Superior Ct. 37, 21 A.2d 475 (1941), we described the office of a workmen's compensation board referee as "similar to that of a master in an equity proceeding or [of] the trial examiner for an administrative body." 146 Pa. Superior Ct. at 39, 21 A.2d at 475.

jurisdiction or those enjoying quasi-judicial immunity is absolute or not. Thus, in *McNair, supra,* the court qualified its holding as follows:

As it was admitted there was no bad faith and the mistake was an error of judgment. . . .

324 Pa. at 62–63, 187 A. at 505.

And in *Dwyer, supra,* the Court held:

Applying the principle of quasi-judicial immunity to the present case, we find that the petitioners are quasi-judicial and/or quasi-prosecutorial officers, that the proceedings at which the extensions and variance were granted were quasi-judicial and that therefore, *in the absence of allegations of bad faith or corruption,* the petitioners in granting the extensions and variance, are insulated from criminal prosecution for the consequences of their actions.

486 Pa. at 595, 406 A.2d at 1360 (emphasis supplied).

■ In this case, the plaintiff's allegations are that by failing to issue a decision "promptly", the referee acted "willfully". While it is not altogether clear that this constitutes an allegation of "bad faith", we are not willing to remand for amendment of the petition in order to consider this matter on the merits. Rather, putting the semantics aside, we assume *arguendo* that "bad faith" is what plaintiff meant by his allegation of "willfulness". Nonetheless, we hold that inferior judicial officers and those shielded by quasi-judicial or quasi-prosecutorial immunity are absolutely immune from liability in civil damages for the consequences of activities which are at the core of their statutorily assigned tasks. Our rationale was put enormously well by Judge Learned Hand in *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.*1949*):

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complains to the guilty, it would

be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to satisfy a jury of his good faith.

Quoted with approval in *Zdaniewicz v. Sands,* 288 Pa. Superior Ct. 420, 425–426, 432 A.2d 231, 234 (1981); *see also Barr v. Mateo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (establishing absolute civil immunity for federal administrative officers.)

■ Finally, we are confronted with a situation considered by the Supreme Court as inappropriate for liability, *to wit,* the "nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care", *DuBree v. Commonwealth,* 481 Pa. 540, 544, 393 A.2d 293, 295 (1978). What "predictable standard" determines the promptness of a decision? That there is none strongly inclines toward the view that even the "possibility of litigation may tend to discourage the making of clear choices." *DuBree, supra.* As such, this is an appropriate occasion to invoke a rule of absolute immunity from liability in civil damages.

We are not today confronted with an official who is alleged to, at the outer reaches of his duties, in some manner maliciously and perhaps corruptly, use his office to directly bring about unlawful harm and mischief. Whether the immunity we hold applies *sub judice* extends that far we do not decide. What we do hold is that it would be intolerable to allow a civil damage remedy for the consequences of the manner and fashion in which quasi-judicial officers make the precise determinations confined to them

by statute. As the Court in *McNair* said of judicial officers:

In certain instances, their decisions are reviewable on appeal, but *otherwise they must be left free to exercise an independent judgment in the conduct of their office.*

324 Pa. at 55, 187 A. at *502* (emphasis supplied). We hold this case involves one of those "instances".

Order affirmed.