J-A05022-17

2017 PA Super 136

| | |
|---|---|
| MICHAEL R. GREENBERG, M.D., MBA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| NADINE M. MCGRAW, | |
| Appellee | No. 759 WDA 2016 |

Appeal from the Order Entered April 28, 2016
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2015-3725

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

OPINION BY BENDER, P.J.E.: **FILED MAY 05, 2017**

Appellant, Michael R. Greenberg, M.D., MBA, appeals from the trial court's April 28, 2016 order sustaining Appellee's, Nadine M. McGraw, preliminary objections in the nature of a demurrer.  Upon careful review, we affirm.

The trial court provided the factual background and procedural history of this case as follows:

> The matter before the [c]ourt are Preliminary Objections in the nature of a demurrer, filed by [Appellee] Nadine M. McGraw.  In 2005, [Ms.] McGraw … enrolled in the Graduate Physician Assistant's Program at Lock Haven University of Pennsylvania in Lock Haven, Clinton County, Pennsylvania.  Complaint, ¶ 26. [Appellant, Dr.] Michael R. Greenberg[,] … was instrumental in founding the Lock Haven program, and has served as its Medical Director, Chair of Admissions, and as a Clinical Professor since its inception in 1996.  *Id.* at ¶ 17.  In June 2006, [Dr.] Greenberg began serving as [Ms.] McGraw's preceptor in the Lock Haven program.  *Id.* at ¶ 27.  After [Ms.] McGraw graduated in June 2007, she gained two different physician's

assistant jobs, but was terminated from each. *Id.* at ¶¶ 28-31. After being terminated twice, according to [Dr.] Greenberg, [Ms.] McGraw "retaliated by making a series of reports against her supervising physicians to Medicare and the Pennsylvania Board of Medicine [(referred to herein as "Board")], all of which were eventually proven to be unfounded." *Id.* at ¶ 32.

In November 2008, [Dr.] Greenberg hired [Ms.] McGraw as a physician's assistant at his private medical practice, Clinton Medical Associates, Ltd. ("CMA"). *Id.* at ¶¶ 16, 33. However, [Ms.] McGraw was terminated by CMA due to insubordination in March 2012. *Id.* at ¶ 34. Again, according to [Dr.] Greenberg, [Ms.] McGraw "retaliated by making a series of false defamatory reports" against Dr. Greenberg, which alleged that he "was addicted to drugs" and that he had "permitted her to perform medical procedures on patients that were outside her scope of practice." *Id.* at ¶¶ 35, 39. [Dr.] Greenberg alleges that said reports were made to an investigator from the Commonwealth of Pennsylvania State Board of Medicine and, through unspecified means, to the Federal Aviation Administration and the Commonwealth of Pennsylvania Department of Labor and Industry. *Id.* at ¶¶ 35, 40-42, 46. As a result of [Ms.] McGraw's allegations, the Board of Medicine began investigating [Dr.] Greenb[e]rg's fitness to practice medicine, which [Dr. Greenburg] avers resulted in damages related to emotional distress, harm to his professional reputation, pecuniary loss, and legal expenses. *Id.* at ¶¶ 49, 52. On June 22, 2015, [Dr.] Greenberg commenced this tort action, bringing claims for Defamation, Abuse of Process, and Intentional Infliction of Emotional Distress. *Id.* at ¶¶ 55-70. [Ms. McGraw] filed preliminary objections in the nature of a demurer [*sic*] based on privilege and failure to state a claim upon which relief can be granted as to each count.

Trial Court Opinion (TCO), 4/28/2016, at 1-2.[1]

_____

[1] The trial court relied on its April 28, 2016 order and opinion granting Ms. McGraw's preliminary objections and dismissing the case as its Pa.R.A.P. 1925(a) opinion. *See* Trial Court Opinion Pursuant to Pa.R.A.P. 1925(a), 6/21/16, at 1 ("After a thorough review of [Dr. Greenberg's] Statement of Errors, particularly paragraphs 35-41, this [c]ourt has concluded that all of the issues raised are addressed in the [April 28, 2016] Opinion and Order.

*(Footnote Continued Next Page)*

The trial court sustained Ms. McGraw's preliminary objections for each of Dr. Greenberg's above-stated claims. On May 23, 2016, Dr. Greenberg filed a timely notice of appeal. Thereafter, he filed a timely concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On appeal, Dr. Greenberg raises the following issues for our review:

1. Whether the trial court erred in holding that the Medical Practice Act, 63 P.S. § 422.4, provides absolute immunity to claims sounding in defamation and abuse of process where the Complaint alleges that [Ms. McGraw] maliciously and intentionally made false reports to a Board of Medicine investigator?

2. Whether the trial court erred and/or abused its discretion in holding that [Dr. Greenberg's] allegations that [Ms. McGraw] maliciously initiated an investigation into [Dr. Greenberg's] fitness to practice medicine to accomplish a purpose for which the process was not designed is insufficient to state a claim for abuse of process?

3. Whether the trial court erred and/or abused its discretion in holding that statements that specifically state or imply illicit drug use are insufficiently "outrageous" to state a claim for Intentional Infliction of Emotional Distress.

Dr. Greenberg's Brief at 3.

Initially, we set forth our standard of review:

---

*(Footnote Continued)* ————————

The [c]ourt hereby incorporates its April 28, 2016 Opinion and Order as its 1925(a) Opinion and attaches it hereto."); ***see also*** Pa.R.A.P. 1925(a)(1) ("Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order….").

- 3 -

[O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale*, 35 A.3d 779, 783 (Pa. Super. 2012) (internal citations omitted).

First, we turn to Dr. Greenberg's issue regarding "[w]hether the trial court erred in holding that the Medical Practice Act, 63 P.S. § 422.4,[2]

_____

[2] This section of the Medical Practice Act is entitled "Impaired professionals." With respect to immunity, this section provides, in relevant part, the following:

**(f) Reports to the board.--**Any hospital or health care facility, peer or colleague who has substantial evidence that a professional has an active addictive disease for which the professional is not receiving treatment, is diverting a controlled substance or is mentally or physically incompetent to carry out the duties of his or her license shall make or cause to be made a report to the board: Provided, [t]hat any person or facility who acts in a treatment capacity to an impaired physician in an approved treatment program is exempt from the mandatory reporting requirements of this subsection. Any person or facility who reports pursuant to this section in good faith and without malice shall be immune from any civil or criminal liability arising

*(Footnote Continued Next Page)*

provides absolute immunity to claims sounding in defamation and abuse of process where the Complaint alleges that [Ms. McGraw] maliciously and intentionally made false reports to a Board of Medicine investigator[.]" Dr. Greenberg's Brief at 3. In reviewing the trial court's opinion, we are puzzled by the phrasing of this issue by Dr. Greenberg, as the trial court does not hold that the Medical Practice Act provides absolute immunity to defamation and abuse of process claims. Instead, the trial court sustained Ms. McGraw's preliminary objections related to Dr. Greenberg's defamation claim on the basis of the common law principle of judicial privilege, explaining that "[t]he Board of Medicine performs discretionary, quasi-judicial functions, and [Ms. McGraw] is protected by absolute privilege for her participation in the process as a witness." TCO at 4 (citation omitted).[3] As a matter of policy, it

_(Footnote Continued)_ ─────────────

> from such report. Failure to provide such report within a reasonable time from receipt of knowledge of impairment shall subject the person or facility to a fine not to exceed $1,000. The board shall levy this penalty only after affording the accused party the opportunity for a hearing, as provided in Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure).

63 P.S. § 422.4(f).

[3] Indeed, despite his statement of this issue above, in his reply brief, Dr. Greenberg contends that "the trial court erred in sustaining [Ms. McGraw's] preliminary objections and dismissing [Dr. Greenberg's] Complaint **by holding that [Ms. McGraw] was entitled to 'absolute privilege' for her defamatory statements the trial court determined arose from the quasi-judicial function performed by the Board of Medicine in the physician disciplinary process**." Dr. Greenberg's Reply Brief at 1 (emphasis added). Moreover, Dr. Greenberg spends the majority of his

_(Footnote Continued Next Page)_

reasoned that judicial privilege should apply under these circumstances in order "to encourage witnesses to give complete and unintimidated testimony." *Id.* at 4 (citations and brackets omitted). We agree.[4]

We begin our analysis by providing some background on judicial privilege. "All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse. Thus, statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court." *Binder v. Triangle Publications, Inc.*, 275 A.2d 53, 56 (Pa. 1971) (citations omitted). This "protected realm has traditionally been regarded as composed only of those communications which are issued *in the*

*(Footnote Continued)* _____

argument on this issue discussing the applicability of judicial privilege to this matter, and not whether the Medical Practice Act provides absolute immunity to defamation and abuse of process claims. *See* Dr. Greenberg's Brief at 8-14. Thus, we do not consider the immunity afforded by the Medical Practice Act, and how it would relate to — or if it would supplant — the common law principle of judicial privilege. *See Karn v. Quick & Reilly Inc.*, 912 A.2d 329, 336 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention.") (citation omitted). Additionally, despite Dr. Greenberg's statement of this issue above, the trial court does not state that any privilege bars Dr. Greenberg's abuse of process claim; instead, it dismissed that claim because it determined that Dr. Greenberg failed to state a claim for abuse of process. *See* TCO at 4-5.

[4] Before delving into our analysis of this issue, we note that "[w]hether a privilege exists/applies in a given context is a question of law for the court." *Doe v. Wyoming Valley Health Care System, Inc.*, 987 A.2d 758, 767 (Pa. Super. 2009) (citation omitted).

*regular course of judicial proceedings* and which are *pertinent and material to the redress or relief sought*." **Post v. Mendel**, 507 A.2d 351, 355 (Pa. 1986) (citation omitted; emphasis in original). Thus, "[w]hen alleged libelous or defamatory matters, or statements, or allegations and averments in pleadings or in the trial or argument of a case are pertinent, relevant and material to any issue in a civil suit, there is no civil liability for making any of them." **Id.** (citation omitted).

Significantly, judicial privilege is applicable to "communications made prior to the institution of proceedings" if such communications were "pertinent and material" and "ha[d] been issued in the regular course of preparing for contemplated proceedings." **Id.** at 356. **See also Milliner v. Enck**, 709 A.2d 417, 420 (Pa. Super. 1998) ("It is clear that an allegedly defamatory communication is absolutely privileged when it is published prior to a 'judicial proceeding' as long as that communication has a bearing on the subject matter of the litigation.") (citation omitted). Further, we have observed that, "[t]he purpose for which the privilege exists cannot fully be achieved by limiting the privilege to structured or formal proceedings." **Smith v. Griffiths**, 476 A.2d 22, 25 (Pa. Super. 1984). Accordingly, "the privilege extends not only to communications made in open court, but also encompasses pleadings and even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of a client's interest." **Pawlowski v. Smorto**, 588 A.2d 36, 41 (Pa. Super. 1991) (citations omitted). In fact, the absolute privilege has been extended

to statements made by private parties to law enforcement officials for the purpose of initiating the prosecution of criminal charges, *see id.* at 42, as well as to statements made to mental health officials for the purpose of initiating involuntary commitment proceedings, *Marino v. Fava*, 915 A.2d 121, 124 (Pa. Super. 2006). *Cf. Schanne v. Addis*, 121 A.3d 942, 952 (Pa. 2015) (holding that "the judicial privilege does not apply to an allegation [concerning a school teacher] made by an adult[, former student,] before commencement of any quasi-judicial proceeding *and without an intent that it lead to a quasi-judicial proceeding*") (footnote omitted; emphasis added).

Our Supreme Court has previously discussed the importance of judicial privilege, specifically within the context of protecting witnesses:

> The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, to witnesses to encourage their complete and unintimidated testimony in court, and to counsel to enable him to best represent his client's interests. Likewise, the privilege exists because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings.

> [*Binder*,] 275 A.2d at 56 (citation omitted). *See also, Post*[,] 507 A.2d [at] 354 … ("The origin of the rule was the great mischief that would result if witnesses in courts of justice were not at liberty to speak freely, subject only to the animadversion of the court.... The rule is inflexible that no action will lie for words spoken or written in the course of giving evidence.")[.]

> The United States Supreme Court addressed the policy concerns underlying the witness immunity doctrine in the oft-cited

decision of ***Briscoe v. LaHue***, 460 U.S. 325, 103 S.Ct. 1108, 1112-1114, 75 L.Ed.2d 96 (1983) (footnotes and citations omitted):

The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law. Some American decisions required a showing that the witness' allegedly defamatory statements were relevant to the judicial proceeding, but once this threshold showing had been made, the witness had an absolute privilege. The plaintiff could not recover even if the witness knew the statements were false and made them with malice.

In the words of one 19th-century court, in damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. Even within the constraints of the witness' oath there may be various ways to give an account or to state an opinion. These alternatives may be more or less detailed and may differ in emphasis and certainty. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. But the truthfinding process is better served if the witness' testimony is submitted to "the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies."

***LLMD of Michigan, Inc. v. Jackson-Cross Co.***, 740 A.2d 186, 188-89 (Pa. 1999).

Because of these strong public policy concerns, courts have expanded the absolute privilege — which traditionally applied only to defamation actions — to other torts:

> The witness immunity doctrine has been applied by the Superior Court in actions other than for defamation when the court has determined that the extension of immunity is in furtherance of the policy underlying the doctrine. *See Clodgo v. Bowman*, 411 Pa. Super. 267, 601 A.2d 342, 345 (1992), *appeal granted*, 532 Pa. 640, 614 A.2d 1138 (1992), *appeal dismissed as having been improvidently granted*, 533 Pa. 352, 625 A.2d 612 (1993), ("The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with a judicial proceedings [*sic*] and was material and relevant to it, the privilege applies.")[;] *Moses v. McWilliams*, 379 Pa. Super. 150, 549 A.2d 950, 957 (1988) ("While it is true that immunity from civil liability in judicial proceedings has been applied most frequently in defamation actions, many courts, including those in Pennsylvania, have extended the immunity from civil liability to other alleged torts when they occur in connection with judicial proceedings.")[.]

*Id.* at 189-90 (brackets in original and added).

As discussed above, judicial privilege applies to communications issued in the regular course of judicial proceedings, which "include all proceedings in which an officer or tribunal exercises official functions." *Doe*, 987 A.2d at 766 (citation omitted). In addition, "[o]ur case law applies privilege to 'quasi-judicial' proceedings as well." *Id.* (citations omitted). "The test to determine if a function is 'quasi-judicial' is whether it involves the exercise of discretion and requires notice and a hearing." *Urbano v. Meneses*, 431 A.2d 308, 311 (Pa. Super. 1981) (citations omitted). More specifically, "we look to the presence and exercise of discretionary decision-making authority

(*i.e.*, applying the law, rules and regulations to the factual matrix of a given case) as well as the existence of procedural safeguards in the administrative proceeding similar to the safeguards afforded at a judicial proceeding (*e.g.*, notice, hearing, right to cross-examine witnesses, etc.)." ***Pollina v. Dishong***, 98 A.3d 613, 620-21 (Pa. Super. 2014) (citation omitted). This Court has noted that "the majority of jurisdictions apply absolute privilege to defamatory statements which are made in relation to a 'quasi-judicial proceeding.'" ***Milliner***, 709 A.2d at 419 n.1 (citations omitted). For instance, we have extended the absolute privilege to a witness testifying at a hearing before the National Labor Relations Board. ***Doe***, 987 A.2d at 767-68. ***See also Pollina***, 98 A.3d at 621 (citing ***Doe*** for the proposition that "[q]uasi-judicial immunity has also been extended to witnesses testifying at an administrative adjudicatory hearing").

In the case at bar, Dr. Greenberg alleged that, "[f]ollowing [Ms.] McGraw's termination of employment with CMA, [Ms.] McGraw made a retaliatory and defamatory and false report to the Board of Medicine falsely alleging that Dr. Greenberg was addicted to drugs and that Dr. Greenberg had permitted her to perform medical procedures on patients that were outside her scope of practice." Complaint, ¶ 39. The trial court reasoned that judicial privilege applied because the Board of Medicine performs discretionary, quasi-judicial functions, explaining:

> [Ms. McGraw's] statements to the Board of Medicine investigator are subject to an absolute privilege. The investigator was gathering confidential information about [Dr. Greenberg], a

licensee of the Board, in order to evaluate [Dr. Greenberg's] fitness to practice medicine. ***See*** 40 P.S. § 1303.907(a), 49 Pa. Code § 16.55(c). The information goes to a Board prosecutor, "an assistant counsel assigned by the Office of General Counsel" who uses discretionary decision-making authority to determine whether to initiate the filing of formal charges. 49 Pa. Code § 16.41, § 16.55. Throughout the disciplinary process, quasi-judicial functions are performed by investigating complaints, filing formal charges, and entering into negotiations. ***Id.*** § 16.55. Information may ultimately be used in a formal hearing held before a hearing examiner, and the decision may be appealed to the Board, and then the Commonwealth Court. ***Id.*** § 16.56-58. The Board of Medicine performs discretionary, quasi-judicial functions, and [Ms. McGraw] is protected by absolute privilege for her participation in the process as a witness….

TCO at 4.[5]

We note that, in his brief, Dr. Greenberg does not dispute that the regulatory procedure laid out by the trial court applies; instead, he only contends that Ms. McGraw's "statements were <u>not</u> made during any quasi-judicial proceedings or hearings before the State Board [o]f Medicine." Dr. Greenberg's Brief at 13 (emphasis in original).[6] Dr. Greenberg emphasizes that Ms. McGraw's "statements were made during the investigatory phase of

---

[5] In its analysis, the trial court quotes from, and "adopts [the] well-reasoned logic" of, an opinion sustaining the defendant's preliminary objections issued in ***Greenberg v. Buckley***, No. 2015-2372, a case from "the Centre County Court of Common Pleas consider[ing] judicial privilege in a matter involving similar facts and the same plaintiff as in the case *sub judice*." TCO at 3-4.

[6] Dr. Greenberg does not specifically assert that an alternative procedure is followed by the State Board of Medicine; he does not point us to any other statutes or regulations addressing how reports to the Board of Medicine are processed and handled. As such, we presume that the regulations cited by the trial court are controlling.

the disciplinary proceedings, and [Ms. McGraw] was certainly not acting in an 'adjudicatory capacity' at the time she made the statements." *Id.* at 12.

In support of his argument, Dr. Greenberg relies on our decision in *Pollina*, *supra*. In that case, we declined to extend both judicial and quasi-judicial immunity to an independent contractor hired as a consultant by a state bureau to investigate, analyze, and formulate an opinion regarding the credibility of fraud allegations made against a dentist. *Pollina*, 98 A.3d at 615-622. Based on his investigation, the consultant issued an analysis and opinion to the bureau finding the claims of fraud to be credible. *Id.* at 615-16. However, the fraud claims later proved to be unsupported by evidence. *Id.* at 616. As a result, the consultant was sued by the dentist and his practice for professional negligence and intentional infliction of emotional distress, primarily on the basis that "[the consultant] failed to exercise due care in his investigation, analysis and opinion to the [bureau.]" *Id.* at 617-18. In response to the complaint, the consultant raised the defense of judicial and/or quasi-judicial immunity. *Id.* at 617, 619-20.

Initially, we determined that judicial immunity did not apply, explaining that, at the time of the investigation, "no lawsuit or other judicial proceeding [regarding the subject of the investigation] was pending, nor was any such judicial proceeding contemplated or subsequently initiated." *Id.* at 619 (footnote omitted). Furthermore, the *Pollina* panel determined that the consultant "did not perform his investigation, conduct his analysis or provide his opinions to the [bureau] for the sole purpose of initiating criminal

- 13 -

proceedings against [the dentist and his practice]." *Id.* at 619 (footnote omitted). We noted that the consultant's "actions were performed as an independent contractor hired as a consultant by the [bureau] for the purpose of providing his professional opinions to the [bureau,]" and that he was "contractually obligated to provide his opinions to the [bureau] pursuant to a business arrangement." *Id*. at 619 n.6. Accordingly, because there was "no evidence that [the consultant's] actions were performed in relation to any judicial proceeding, pending or impeding," we concluded that judicial immunity did not apply. *Id.* at 620 (footnote omitted).

We also concluded that the consultant's actions were not protected by quasi-judicial immunity. We explained that, "[i]n order to determine whether an individual is entitled to quasi-judicial immunity, we must first examine **the nature of the actions complained of** to ascertain whether they were performed within the quasi-judicial adjudicatory function." *Id.* at 621 (emphasis added; footnote omitted).[7] As stated *supra*, the consultant

---

[7] In support of this proposition, we cited to **Myers v. Com., Dept. of Labor and Industry**, 458 A.2d 235, 238 (Pa. Super. 1983) (examining the "nature of the duties" of workmen's compensation referees to determine whether a referee enjoys judicial or quasi-judicial immunity); and **Tulio v. Com., State Horse Racing Com'n**, 470 A.2d 645, 649 (Pa. Cmwlth. 1984) (explaining that "adjudications within an administrative agency share enough of the characteristics of the judicial process (*e.g.*, issuing subpoenas, ruling on evidence, regulating hearings, and making or recommending decisions), that those who participate in them should be absolutely immune from suit for damages. An important element which must be established before this immunity can apply, however, is whether or not the actions
*(Footnote Continued Next Page)*

was sued for "his investigation, analysis and issuance of an opinion" to the bureau. *Id.* First, we determined that the bureau that hired him "investigat[ed] allegations of misconduct," and its investigation of the dentist and his office "[could not] be characterized as a quasi-judicial function" because "there [was] **no evidence of record** that it shared the characteristics of the adjudicatory process that would justify the application of quasi-judicial immunity." *Id.* at 622 (citation omitted; emphasis added).[8] Second, we discerned that the bureau did not exercise discretionary decision-making authority because it was **required** by federal regulations to take the action it did. *Id.* at 622. Third, we emphasized that the dentist and his practice "d[id] not allege any liability based on [the consultant's] participation as a witness in [a quasi-judicial proceeding] (*i.e.*, his deposition testimony)." *Id.* Rather, liability was based upon his negligent investigation, analysis and formulation of an opinion for the bureau. *Id.* at 623. We went on to explain that "judicial immunity does not extend to professional negligence actions which are brought against an expert witness

---
*(Footnote Continued)*

complained of were performed within the quasi-judicial function. If not, then quasi-judicial immunity cannot apply.").

[8] We also pointed out that a separate bureau within the same state agency performed "adjudicatory functions[,]" featuring the filing and service of legal documents, discovery, presentation of witnesses and evidence at hearings before a presiding officer, the issuance of a determination adjudicating the contested issues of law and fact, and the issuance of an appropriate order, decree, or decision. *Id.*; *see also id.* at 622 n.9.

when the allegations of negligence are not premised on the substance of the expert's opinion." *Id.* We observed that "the professional negligence claims against [the consultant] are not based on the substance of his professional opinions or deposition testimony during [a quasi-judicial proceeding]. Rather, [the] claims against [the consultant] are based on his negligence in performing his investigation, conducting his analysis and in formulating his opinions." *Id.*

We find *Pollina* to be distinguishable from the matter at hand. In the case *sub judice*, Ms. McGraw allegedly "made a retaliatory and defamatory and false report to the Board of Medicine...." *See* Complaint, ¶ 39. The regulations cited by the trial court — which, again, are not disputed by Dr. Greenberg to apply — state that complaints are assigned to "prosecution and investigatory staff" who, along with medical consultants as required, make a determination regarding whether a complaint merits consideration. 49 Pa. Code § 16.55(b). The Board prosecutor — who is responsible for prosecuting disciplinary matters before the Board — initiates a reasonable inquiry or investigation "to determine the truth and validity of the allegations in the complaint." *Id.*; 49 Pa. Code § 16.41. After reviewing "the complaint, documentation, records and other materials obtained during the course of an investigation[,]" the Board prosecutor "determine[s] whether to

initiate the filing of formal charges." 49 Pa. Code § 16.55(c).[9] The Board prosecutor "may enter into negotiations at any stage of the complaint, investigation or hearing process to settle the case by consent agreement." 49 Pa. Code § 16.55(d).

Additionally, hearing examiners are appointed by the Governor's Office of General Counsel to hear matters, including disciplinary matters, before the Board. 49 Pa. Code § 16.51. Formal disciplinary matters are open to the public. 49 Pa. Code § 16.56. Upon application for review by any party or upon the Board's own motion, the Board will review the hearing examiner's decision. 49 Pa. Code § 16.57(a)(1). During an appeal, "[t]he Board will review the entire record and, if it deems it advisable, may hear additional testimony from persons already deposed or from new witnesses as well as arguments of counsel to make a Board decision." 49 Pa. Code § 16.57(a)(2). Ultimately, "[t]he Board will issue its final decision, along with its findings of fact and conclusions of law, which will be sent by mail to the parties involved." 49 Pa. Code § 16.57(a)(4). Thereafter, the respondent may appeal the Board's decision to the Commonwealth Court. 49 Pa. Code § 16.58.

---

[9] We observe that, "[t]he documents, materials or information obtained during the course of an investigation shall be confidential and privileged unless admitted as evidence during the course of a formal disciplinary proceeding." 49 Pa. Code § 16.55(c).

Based on the foregoing, we agree with the trial court that these procedures, at the least, constitute a quasi-judicial proceeding, as they share many characteristics of the adjudicatory process. Discretionary decision-making authority (for instance, whether to initiate formal charges or to settle cases by consent agreements) and procedural safeguards (*e.g.*, hearings, appeals, etc.) are patently present. *Pollina*, 98 A.3d at 620-21. Further, in addition to his defamation claim, Dr. Greenberg sued Ms. McGraw for abuse of process, which suggests that he conceded, at least at the outset of this case, that this procedure is more akin to litigation than a mere investigation.[10]

We also determine that Dr. Greenberg's reliance on *Pollina* is inapposite here. We restate that, "in order to determine whether an individual is entitled to quasi-judicial immunity, we must first examine *the nature of the actions complained of* to ascertain whether they were performed within the quasi-judicial adjudicatory function." *Pollina,* 98 A.3d at 621 (emphasis added). In *Pollina*, liability was premised on the consultant's negligent investigation, analysis, and opinion to the bureau, which this Court determined was not within a quasi-judicial adjudicatory function. Here, in contrast, liability is premised on Ms. McGraw's false report

---

[10] We further note that, "the word 'process' as used in the tort of abuse of process 'has been interpreted broadly, and encompasses the entire range of procedures *incident to the litigation process*." *Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993) (emphasis added).

to the Board, ***which Dr. Greenberg claims she made for the purpose of instigating the above-stated legal process against Dr. Greenberg. See, e.g.***, Complaint, ¶ 52 ("At all times relevant hereto, [Ms.] McGraw ***knew and intended that her false reports would result in legal process against Dr. Greenberg's license*** and was motivated by personal animus against Dr. Greenberg and used the legal process to accomplish a purpose or purposes for which the process was not designed, namely to harass Dr. Greenberg and to ***cause him to focus his personal and professional time and resources in defending a baseless action***.") (emphasis added). In other words, Ms. McGraw's liability is based on her role as a witness conveying information to the Board in order to initiate, at the least, a quasi-judicial disciplinary proceeding against Dr. Greenberg.[11]

The weight of authority in this Commonwealth accords with extending an absolute privilege to statements made by individuals seeking to initiate

_____

[11] Other allegations in Dr. Greenberg's complaint bolster that he views these proceedings as adjudicatory in nature. Dr. Greenberg claims that "[t]he foregoing investigation was ultimately withdrawn by the Board of Medicine when [Ms.] McGraw ***refused to testify*** to substantiate the false allegations she previously made to the Board of Medicine's investigator." Complaint, ¶ 51 (emphasis added). Additionally, he alleges that "[Ms.] McGraw falsely and maliciously made statements, innuendoes, and implications to an investigator from the Board of Medicine that she observed drugs in Dr. Greenberg's home in September 2010 before contacting emergency medical services resulting in Dr. Greenberg's admission to the Lock Haven Hospital, which contradicts ***her sworn deposition testimony*** that she had no role whatsoever in Dr. Greenberg's admission to the Lock Haven Hospital in September 2010." Complaint, ¶ 56 (emphasis added).

judicial or quasi-judicial proceedings. *See Schanne*, 121 A.3d at 949 ("[T]he judicial privilege operates by incentivizing individuals to speak freely within a judicial (or quasi-judicial) context—or more to the point here, to speak freely in *seeking* to *initiate* judicial or quasi-judicial proceedings.") (emphasis in original); *Marino*, 915 A.2d at 124 (concluding that "statements [the defendant] made in the application to commit [the plaintiff], and the statements he later made at the commitment hearing, are absolutely privileged and cannot form the basis for a defamation action against [the defendant]."); *Milliner*, 709 A.2d at 420 (rejecting the appellant's argument that "statements made to the Job Center, which relate to the initial determination of an employee's eligibility for unemployment benefits are not part of the 'judicial proceedings,' and therefore, [the] appellees' statements are not cloaked with the absolute privilege"); *Pawlowski*, 588 A.2d at 43 ("[T]he statements were made at least in part for the purpose of convincing the proper authorities to institute criminal proceedings against [the] appellant. Clearly such statements fit squarely within the absolute privilege….").

Moreover, we believe that public policy compels affording the absolute privilege to individuals that report misconduct to the Board of Medicine, regardless of their motives for doing so. "[T]he Board is the agency charged with responsibility and authority to oversee the medical profession and to determine the competency and fitness of its members to practice medicine within the Commonwealth." *Perez-Rocha v. Com., Bureau of*

*Professional and Occupational Affairs, State Bd. of Medicine*, 933 A.2d 1102, 1108 (Pa. Cmwlth. 2007) (citations omitted). Given the importance of having competent and fit medical professionals serving the public, we deem it to be particularly vital that individuals have free and uninhibited access to the Board so that they can report suspected misconduct without the fear of facing subsequent lawsuits based on their statements. *See Marino*, 915 A.2d at 124 (reasoning that "according absolute privilege to statements made in or preliminary to judicial proceedings aims at ensuring free and uninhibited access to the judicial system[,]" and that "[a]lthough such statements may ultimately prove to be false or maliciously motivated, they are deemed to be absolutely privileged because the policy concerns stated above outweigh the right of the defamation plaintiff to seek redress for alleged harm caused by the statements"). Further, we keep in mind that, "[a]lthough it is possible that wrong may at times be done to a defamed party, ... it is *damnum absque injuria*. The inconvenience of the individual must yield to a rule for the good of the general public." *Smith*, 476 A.2d at 24 (citations, brackets, and quotation marks omitted).

Accordingly, for the above-stated reasons, we hold that the absolute privilege applies to statements made to the Board of Medicine for the purpose of initiating judicial or quasi-judicial proceedings against a licensee, even if such statements are allegedly false. As such, we conclude that Dr. Greenberg's defamation claim against Ms. McGraw is barred at this time. In addition, we also apply the absolute privilege to bar Dr. Greenberg's

intentional infliction of emotional distress claim, given that it occurred in connection with the proceedings and in light of the policy implications addressed above. **See LLMD of Michigan, Inc.**, 740 A.2d at 189 ("The witness immunity doctrine has been applied by the Superior Court in actions other than for defamation when the court has determined that the extension of immunity is in furtherance of the policy underlying the doctrine."); **Moses**, 549 A.2d at 957 ("While it is true that immunity from civil liability in judicial proceedings has been applied most frequently in defamation actions, many courts, including those in Pennsylvania, have extended the immunity from civil liability to other alleged torts when they occur in connection with judicial proceedings."); **Thompson v. Sikov**, 490 A.2d 472 (Pa. Super. 1985) (applying absolute privilege to bar intentional infliction of emotional distress claim).[12]

However, we note that the absolute privilege does not apply to bar Dr. Greenberg's abuse of process claim, which we discuss, *infra*. **Freundlich & Littman, LLC v. Feierstein**, -- A.3d---, 2017 WL 712911, at *7 (Pa. Super. filed Feb. 23, 2017) (holding that "judicial privilege does not apply to [the a]ppellants' claims for wrongful use of civil proceedings and abuse of

_____

[12] In determining that the absolute privilege applies to Dr. Greenberg's intentional infliction of emotional distress claim, we note that we can affirm the trial court's order on any basis if the result is correct. **See Lerner v. Lerner**, 954 A.2d 1229, 1240 (Pa. Super. 2008) (affirming the trial court's order on different grounds).

process").[13]  Before addressing that issue, we add one final point on the scope of the judicial or quasi-judicial privilege we discuss herein: this absolute privilege would not protect Ms. McGraw from civil liability for any defamatory statements she makes outside of the regular course of the Board's proceedings.  **See Pawlowski**, 588 A.2d at 41 n.3 ("Of course, even an absolute privilege may be lost through over[-]publication, *i.e.* publication of the defamatory material to unauthorized persons.  In the case of the judicial privilege, over-publication may be found where a statement initially privileged because made in the regular course of judicial proceedings is later republished to another audience outside of the proceedings.") (citations omitted).  We reiterate that, under the Board's regulations discussed above, "[t]he documents, materials or information obtained during the course of an investigation shall be confidential and privileged unless admitted as evidence during the course of a formal disciplinary proceeding."  49 Pa. Code § 16.55(c).  We presume that under this provision, Ms. McGraw's statements to the Board investigator were not public record.  We further note that Dr. Greenberg's defamation claim in this case is based only on statements Ms.

_____

[13] In **Feierstein**, this Court explained that in order to litigate a claim under the Dragonetti Act, 42 Pa.C.S. § 8352 *et seq.*, or for common law abuse of process, "the aggrieved party would have to discuss, at the very least, the pleadings and allegations underlying the prior, purportedly improper action." **Id.** at *6.  Thus, for example, to apply judicial privilege to claims arising under the Dragonetti Act for wrongful use of civil proceedings would "virtually eviscerate this statutory cause of action, which only took effect in 1981." **Id.** at *5 (footnote omitted).

McGraw made to the Board investigator, and not on any statements she allegedly made to his patients or to the community. *See* Complaint, ¶¶ 55-65.

We next consider Dr. Greenberg's second issue pertaining to his abuse of process claim, wherein he asks us to assess "[w]hether the trial court erred and/or abused its discretion in holding that [Dr. Greenberg's] allegations that [Ms. McGraw] *maliciously initiated* an investigation into [Dr. Greenberg's] fitness to practice medicine to accomplish a purpose for which the process was not designed is insufficient to state a claim for abuse of process[.]" Dr. Greenberg's Brief at 3 (emphasis added). He states that he "alleged that [Ms. McGraw] initiated and employed legal proceedings before the Board of Medicine in the course of an ongoing vendetta against Dr. Greenberg, which statements were made to state authorities to harass him and to attract attention away from her own tortious conduct." *Id.* at 15. The trial court, in turn, determined that Dr. Greenberg failed to state a claim for abuse of process because "when pleading abuse of process, 'it is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive. Rather, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action.'" TCO at 5 (citations omitted). The trial court observed that "[Dr.] Greenberg makes no

- 24 -

allegation even resembling extortion, blackmail, or coercion….” ***Id.*** With this context, we begin our analysis of this issue.

This Court has previously described the common law tort of abuse of process as follows:

> The tort of “abuse of process” is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. This tort differs from that of wrongful use of civil proceedings in that, in the former, the existence of probable cause to employ the particular process for its intended use is immaterial. ***The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure.*** In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

> ***Shiner v. Moriarty***, 706 A.2d 1228, 1236 (Pa. Super. 1998), *appeal denied*, 556 Pa. 711, 729 A.2d 1130 (1998).

> ***The gravamen of the misconduct for which the liability stated … is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings***; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. ***The subsequent misuse of the process, though properly***

> ***obtained, constitutes the misconduct for which the liability is imposed....***
>
> ***Rosen v. American Bank of Rolla***, 426 Pa. Super. 376, 627 A.2d 190, 192 (1993).

***Lerner***, 954 A.2d at 1238-39 (brackets in original; emphasis added). ***See also Hart v. O'Malley***, 647 A.2d 542, 551 n.2 (Pa. Super. 1994) ("A preliminary injunction is a process in civil litigation. The [appellants] allege that the preliminary injunction was instituted for an improper purpose. However, this claim, if proven, only establishes a cause of action for wrongful use of civil proceedings, not a claim for abuse of process."); ***Rosen v. Tesoro Petroleum Corp.***, 582 A.2d 27, 32-33 (Pa. Super. 1990) (explaining that "abuse of civil process is concerned with a perversion of a process after it is issued" and, as a consequence, "find[ing] that [the] appellants have failed to state a claim for abuse of process, as the allegations in their complaint amount to no more than a charge for the initiation of litigation for a wrongful purpose, and do not charge [the] appellees with any 'perversion' of properly issued process") (citation omitted); ***Shaffer v. Stewart***, 473 A.2d 1017, 1019, 1021 (Pa. Super. 1984) (explaining that "[w]hen the caveat [to the probate of a will] was filed and prevented the immediate probate of the decedent's will, a civil proceeding had been instituted within the meaning and intent of the Pennsylvania statute," and, as a result, no cause of action for abuse of process could exist where "the averments of the amended complaint are that the caveat was filed maliciously and without probable cause in the hope of

effecting a settlement on behalf of persons having no legally recognizable claim….").

In this case, Dr. Greenberg alleged that "[Ms.] McGraw used legal process in the form of ***initiating*** a baseless investigation into Dr. Greenberg's fitness to practice medicine to accomplish a purpose for which the process was not designed." Complaint, ¶ 67 (emphasis added). Additionally, he averred that, "[a]s a direct and proximate cause of [Ms.] McGraw's abuse of legal process, Dr. Greenberg has suffered damages to his personal and professional reputation, emotional distress, pecuniary losses, and expenses including attorney[s'] fees and litigation costs incurred in ***defending himself against the proceedings initiated against him***." Complaint, ¶ 68 (emphasis added). Based on the case law cited *supra*, it is evident that an abuse of process claim cannot be based on the wrongful initiation of proceedings, which is what Dr. Greenberg alleges Ms. McGraw did by making false statements to a Board investigator. ***There are no allegations that Ms. McGraw perverted the legal process after its issuance.*** In fact, as mentioned *supra*, Dr. Greenberg stated that "[t]he foregoing investigation was ultimately withdrawn by the Board of Medicine when Ms. McGraw refused to testify to substantiate the false allegations she previously made to the Board of Medicine's investigator." Complaint, ¶ 51. Therefore, we conclude that Dr. Greenberg has failed to state a claim for

abuse of process.[14]  Accordingly, we affirm the trial court's order sustaining Ms. McGraw's preliminary objections.[15]

Order affirmed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2017

---

[14] Again, we may affirm the trial court's order on any basis.  **Lerner***, supra*.

[15]  Because we dispose of Dr. Greenberg's claims on the above-stated grounds, we need not address his remaining issue pertaining to whether he sufficiently stated a claim for intentional infliction of emotional distress.