J-A06003-18

2018 PA Super 209

| | |
|---|---|
| WEIRTON MEDICAL CENTER, INC., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| INTROUBLEZONE, INC., D/B/A INTROUBLEZONE PRODUCTIONS, A WYOMING CORPORATION, AND PAUL SCHNEIDER AND LYNDA SCHNEIDER, HUSBAND AND WIFE, | |
| Appellees | No. 952 WDA 2017 |

Appeal from the Order Entered June 13, 2017
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-16-001563

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

CONCURRING AND DISSENTING OPINION BY BENDER, P.J.E.:

FILED JULY 18, 2018

I respectfully disagree with the Majority's conclusions regarding the dismissal of WMC's claims for defamation, and false association and/or false advertising under the Lanham Act.  For the reasons that follow, I would reverse the trial court's order sustaining the preliminary objections in the nature of a demurrer filed by Appellees in its entirety, and remand for further proceedings.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Initially, I believe the trial court erred when it reviewed and considered evidence that was outside the complaint — specifically, the Video. In my opinion, examining the Video contravened the standard of review for deciding preliminary objections. While the trial court may have been trying to streamline the litigation by reviewing the Video, neither it nor Appellees offer authority to support that: (1) WMC was required to append an actual transcript of the Video to its complaint;[1] (2) the trial court could review evidence outside of the complaint in disposing of Appellees' preliminary objections;[2] and (3) the trial court could, on its own initiative, file the Video as part of the record after WMC had already filed its notice of appeal to this Court.[3]

_____

[1] Appellees did not make this argument in their preliminary objections, and do not argue it on appeal, despite WMC's assertion in its brief that it was not required to provide an actual transcript. See WMC's Brief at 10 ("In an action for slander the complaint is sufficient if it contains the substance of the spoken words.") (citing Itri v. Lewis, 422 A.2d 591, 592 (Pa. Super. 1980) (per curiam)) (emphasis added in WMC's brief).

[2] Appellees also do not develop an argument in their brief advocating that the trial court could consider evidence outside of WMC's complaint. Rather, they claim that WMC waived this issue by submitting the Video to the trial court. Appellees' Brief at 4. I would not deem this issue waived, given the procedural irregularities below and that WMC submitted the Video in response to the trial court's inquiry and/or direction.

[3] As the Majority mentions, at argument on Appellees' preliminary objections, the trial court requested that WMC send it the Video. See Majority Op. at 4. It appears that after WMC had already filed its notice of appeal, the trial court then took it upon itself to make the Video a part of the record. See Rule 1925(a) Opinion, 6/28/2017, at 2 ("The DVD that I reviewed has been filed by me with the court file and should be forwarded with that file.") (unnumbered pages).

- 2 -

This Court has stated, "[P]reliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by a demurrer." Mellon Bank, N.A. v. Fabinyi, 650 A.2d 895, 899 (Pa. Super. 1994) (citation omitted). "In order to sustain a demurrer, it is essential that the face of the complaint indicate that its claims may not be sustained and that the law will not permit a recovery." Id. (citation omitted).

With respect to WMC's defamation claim, I believe the trial court should not have evaluated the Video, but instead should have limited its review of that claim to the allegations made in WMC's complaint. As WMC points out, the trial court went beyond "resolving the basic legal question of whether WMC stated a cognizable claim in its [c]omplaint." WMC's Brief at 11. Further, based on the complaint, I would determine that WMC set forth sufficient facts to state a plausible claim for defamation against Appellees. In arriving at that conclusion, I note my divergence with two key determinations made by the Majority.

First, I disagree with the Majority that WMC failed to establish a connection between the Video and WMC. See Majority Op. at 7-8. In its complaint, WMC alleged that, "[a]t the time [Appellees] were engaged in their efforts to promote Drastic Plastic, Dr. Oser's affiliation with WMC was well-known and publicized among current patients, prospective patients, and the medical community. In fact, Dr. Oser's website and Facebook page included

direct links to WMC-related websites." Complaint, 3/23/2017, at ¶ 25 (internal citations omitted). Moreover, WMC averred that "[Appellees'] use of WMC's identifying characteristics, medical professionals and employees (in particular, Dr. Oser), facilities, and the display of confidential patient information creates the reasonable likelihood that individuals will believe that WMC is associated with or otherwise endorses Drastic Plastic, the Video, and its content." Id. at ¶ 26. At this juncture, we must accept WMC's allegations and all inferences reasonably deducible therefrom as true. See Greenberg v. McGraw, 161 A.3d 976, 980 (Pa. Super. 2017) ("When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom.") (citation omitted). Thus, accepting as true that Dr. Oser's association with WMC was well-known throughout the community, I would consider Dr. Oser's starring role in Drastic Plastic as sufficient to connect WMC to the Video.

Second, I dispute the Majority's determination that "there was nothing in the Video that was capable of defamatory meaning with respect to WMC." See Majority Op. at 8 n.3. Again, accepting WMC's allegations and all inferences reasonably deducible therefrom as true, which is required at this stage, see Greenberg, supra, the conduct described in WMC's complaint demonstrates a lack of respect for patients and their privacy, thereby lowering the quality of the medical services that Dr. Oser, his staff, and WMC provide to them. See Complaint at ¶ 14 ("The Video contains statements made by

individuals who identify themselves as Dr. Oser's patients and employees, and therefore, patients and employees of WMC. Throughout the Video, Dr. Oser's patients are frequently and pejoratively called 'crazy.' Countless, highly offensive references are made concerning Dr. Oser's work in breast augmentation. Additionally, the Video portrays the residents of West Virginia as uneducated and willing to waste money on unnecessary plastic surgery."); id. at ¶ 27 ("The graphic nature of the Video, its objectification of women, the careless way in which patient records are displayed, and the contemptuous way it portrays the residents of West Virginia adversely affects WMC's reputation. Among other things, current patients, prospective patients, and the medical community are led to believe that WMC has no respect for its patients and their privacy."). I do not think that most people would want to go to a hospital where staff insults them, objectifies them, considers them uneducated and foolish, and disregards their privacy. To me, such content could tend to harm the reputation of WMC so as to lower it in the estimation of the community or deter third persons from associating or dealing with it. See Bell v. Mayview State Hospital, 853 A.2d 1058, 1062 (Pa. Super. 2004) ("A communication may be considered defamatory if it tends to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.") (citation omitted); see also MacElree v. Philadelphia Newspapers, Inc., 674 A.2d 1050, 1055 (Pa. 1996) ("Because there was doubt as to the defamatory nature of the complained of language, [the] appellees' demurrer

should have been overruled."). Thus, I would decline to dismiss WMC's defamation claim on these grounds.

Finally, as for WMC's other claims, I agree with the Majority that the trial court incorrectly determined that, because WMC's defamation claim failed, WMC's claims under the Lanham Act and for trespass must necessarily fail too. See Majority Op. at 9.[4] However, Appellees' only other argument raised in their brief as to why these claims should be dismissed is that ITZ could not have trespassed as "WMC does not allege that … ITZ ever stepped foot on the property." See Appellees' Brief at 8. Yet, it appears that WMC only advanced its trespassing claim against Mr. and Ms. Schneider — and not ITZ — in its complaint anyway. See Complaint at 9 (bringing trespass count against only Mr. and Ms. Schneider).[5] Consequently, in light of the arguments advanced by the parties, I would determine that the trial court's dismissal of WMC's claims for trespass and Lanham Act violations was also improper.

_____

[4] Because I determine that WMC has set forth a cognizable defamation claim, the basis for the trial court's rationale would be undermined.

[5] Further, in their preliminary objections below, Appellees contended that WMC's "trespass claim fails because Dr. Oser had apparent authority to permit entry and filming on the property, and the filming of the [V]ideo on the property did not physically damage the property." See Appellees' Preliminary Objections, 5/1/2017, at 2 (unnumbered pages). Additionally, they claimed that "WMC lacks Lanham Act standing for unfair competition because as set forth in the [c]omplaint[,] WMC and [Appellees] are not competitors." Id. Appellees do not adequately develop and support these arguments below, and therefore they fail to convince me that WMC's claims are legally insufficient on these grounds.